UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TRAVIS J. WILLIAMS, #321522, | ) | Civil Action No.: 4:13-cv-0005-RMG-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| WARDEN McFADDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Petitioner, Travis J. Williams (Petitioner/Williams), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing pro se, filed his Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 16, 2013. Respondent filed a Motion for Summary Judgment (Document # 24) on May 22, 2013, along with a Return and supporting Memorandum. The undersigned issued an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response. Petitioner filed a Response (Document # 28) in opposition to the Motion for Summary Judgment on July 1, 2013.

This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## II.    PROCEDURAL HISTORY

### A.    Indictment, Plea and Sentence

The Petitioner, Travis Williams, #321552, is presently confined at the Lieber Correctional

Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court of Lexington County. The Petitioner was indicted at the October 2006 term of the Lexington County Grand Jury for two counts of criminal sexual conduct with a minor 2nd degree, child 11-14 years of age. App. p. 141-48. Nathaniel Roberson, Esquire, represented him. On April 30, 2007, Petitioner pleaded guilty to one count of criminal sexual conduct 2nd degree. App. 1-19. He was sentenced by the Honorable William P. Keesley to confinement for twenty years. App. 17-18. Petitioner did not appeal his conviction or sentence.

### B.    Application for Post-Conviction Relief (Williams v. State, 2008-CP-32-0904)

Petitioner filed an Application for Post-Conviction Relief (PCR) on February 27, 2008. App. 20-24. Respondent made its Return on or about May 6, 2008. App. 25-29. An evidentiary hearing was convened on February 3, 2010, at the Lexington County Courthouse. App. 33-120. Petitioner was present at the hearing and was represented by Brad Bunce, Esquire. Respondent was represented by A. West Lee of the South Carolina Attorney General's Office. The hearing was heard by the Honorable R. Lawton McIntosh.

In his PCR Application, Petitioner alleged he is being held in custody unlawfully for the following reasons:

      1. Ineffective Assistance of Counsel
          a. "I was not informed that I could appeal. Attorney never informed me."
          b. "Counsel failed to investigate."
      2. Involuntary Guilty Plea
          a. "Coerced into pleading guilty."

App. 21. Subsequently, on November 17, 2009, Petitioner's attorney filed an amended application for post-conviction relief, which made the following additional claims:

      3. Applicant's defense counsel failed to adequately investigate Applicant's case;
      4. Counsel guaranteed Applicant that he would not receive the maximum sentence;
      5. Counsel advised Applicant that he was subject to the death penalty;
      6. Counsel failed to discuss in good faith defenses available to the Applicant;

7. Counsel advised Applicant that he would refuse to call a key witness that would recant her earlier statement to investigators and refute the accusation against the Applicant;

8. Applicant's plea of guilty was not knowingly and intelligently entered, inasmuch as:

    a. Counsel failed to advise Applicant of his rights as a criminal case defendant;

    b. Counsel affirmatively misstated the possible penalties for all of the charges he faced;

    c. Counsel failed to advise Applicant as to how he might be sentenced at the conclusion of the plea hearing;

    d. Counsel failed to advise Applicant that he could withdraw his plea prior to the court accepting the plea;

    e. Counsel failed to discuss in good faith defenses available to the Applicant;

    f. Counsel advised the Applicant that he would refuse to call a witness that would recant her earlier statement to investigators and would refute the accusation against Applicant;

    g. Applicant would not have pled guilty if he had the true facts before him; and

    h. Applicant would have withdrawn his plea before the court accepted the plea if his counsel had advised him that was possible;

9. Counsel failed to properly explain Applicant's appellate rights to him;

10. Counsel failed to file a timely notice of appeal when directed to do so by the Applicant.

App. 30-32.

At the hearing, Petitioner testified on his own behalf. Respondent presented testimony from the Petitioner's plea counsel, Nathaniel Roberson, Esquire. App. 33-120. The PCR Court also had before it a copy of the transcript from the Petitioner's guilty plea proceedings, the records of the Lexington County Clerk of Court, the Petitioner's records from the South Carolina Department of Corrections, the Application for Post-Conviction Relief, the State's Return, and evidence presented during the hearing.

On September 13, 2010, Judge McIntosh filed a written order of dismissal, which is discussed in more detail below. App. 121-140.

**C.    PCR Appeal**

The Petitioner made an appeal from the denial of Post-Conviction Relief. In the appeal,

Williams was represented by Wanda H. Carter, Deputy Chief Appellate Defender. On May 5, 2011, counsel made a petition for writ of certiorari in the South Carolina Supreme Court asserting the following questions presented:

I.

Trial counsel erred in allowing petitioner to plead guilty in the case where an alibi witness was available, and where witnesses heard the prosecutrix admit she fabricated the sexual assault allegations against petitioner, and where the prosecutrix's mother admitted to defense counsel that she framed petitioner and further explained how she accomplished this (by wiping petitioner's semen on the child) because there was no need for a plea due to this exculpatory evidence which would have exonerated petitioner on the charges.

II.

The PCR judge erred in denying petitioner's allegations that he did not voluntarily and intelligently waive his right to a direct appeal in the case.

Petition for Writ of Certiorari, p. 2.

Respondent, through Assistant Attorney General Kaelon May, made a Return to the Petition on September 19, 2011. On December 6, 2012, the Supreme Court of South Carolina made its Order concluding that the Petition for Writ of Certiorari was denied. The remittitur was issued on December 28, 2012.

**D.    Second PCR Application (<u>Williams v. State</u>, 2012-CP-32-0846)**

The Petitioner filed a second PCR Application in Lexington County on February 23, 2012. In this Application, Petitioner, pro se alleged:

1. Ineffective Assistance of Counsel
    a. "Failure to present a defense"
    b. "Doyle Violations"
    c. "Harbored exculpatory information"
    d. "Actually Innocent"
    e. "Expand the record"
    f. "Perjured Testimony/statement"
2. Involuntary Plea
    a. "I was force to plea to the charge under what is called duress compel force."

-4-

Application. On July 16, 2012, the Respondent made a Return seeking to dismiss the matter under the statute of limitations and successive to the pending PCR on appeal. On October 16, 2012, the Honorable R. Knox McMahon, presiding judge, made a "Conditional Order of Dismissal" concluding the matter was successive and untimely under § 17-27-45, § 17-27-90 and Aice v. State, 305 S.C. 448, 409 S.E.2d 392. The Conditional Order was served on Petitioner on November 6, 2012.[1]

## III.    GROUNDS FOR RELIEF

Petitioner asserts the following grounds for relief in his federal habeas petition:

**Ground One:**  Ineffective Assistance of Counsel:
1. Counsel advised Applicant that he would refuse to call a key witness that would recant her earlier statement to investigators and refute the accusation against the Applicant.
2. Did not file a direct appeal in which I informed him to.
3. Applicant's defense counsel failed to adequately investigate Applicant's case.
4. Counsel failed to advise Applicant of his rights as a criminal case defendant.
5. Counsel failed to call alibi defense witness who was available where she would state how she set petitioner up by wiping semen (petitioner's) on the child.

**Ground Two:**  Involuntary Guilty Plea:
1. Trial counsel erred in allowing petitioner to plead guilty in a case where an alibi defense witness was available and where witnesses heard the prosecutrix admit she fabricated the sexual assault allegation against petitioner and where the prosecutrix mother admitted to defense counsel that she framed petitioner and explained how she accomplished this (by wiping semen on the child) because there was no need to plea due to this exculpatory evidence which

---

[1] A review of the Lexington County Eleventh Judicial Circuit Public Index for this second PCR reveals that a Final Order of dismissal was filed on June 20, 2013, and no Notice of Appeal was filed.  See http://cms.lex-co.com/SCJDWeb/PublicIndex/CaseDetails.aspx?County=32&CourtAgency=32002&Casenum=2012CP3200846&CaseType=V (last visited January 2, 2014). See also  Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").  Thus, it is apparent that any issues raised in this second PCR are procedurally barred from review in this court.

would have exonerated petitioner.

**Ground Three:**  Counsel failed to file a timely notice of appeal when directed to do so by Applicant:

      1. Petitioner told counsel to file a direct appeal on his conviction and counsel did not file one.

      2. PCR judge erred in denying Petitioner's allegation that he did not voluntarily and intelligently waive his right to a direct appeal in this case.

**Ground Four:**  Ineffective Assistance of Counsel (Actual Innocence):

      1. Affidavit of S__ H__ dated February 3, 2010.

      2. In the affidavit, the affiant asserts that she accused Petitioner of the crime in July 2006, that before Petitioner pled guilty she told Tina Mitchell and Ashley Walker that he never assaulted her, that the Petitioner never assaulted her and that her statement was not true.

**Ground Five:**  Rule 15(a) SCRP:

      1. In this assertion Petitioner claims he was sentenced under S.C. Code Ann. § 24-13-100 for a no parole offense and required to participate in a community supervision program (CSP) for up to two years.

      2. He complains that because he could be subject to multiple revocations, he may be subject to some additional time equal to the length of the period of his incarceration.

## IV.    STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case.

Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir.2005) (citing Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id. "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir.2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## V.   PROCEDURAL BAR

### A.   Exhaustion and Procedural Bypass

The doctrines of exhaustion and procedural bypass can bar a federal habeas claim if a petitioner has not first submitted his claims for relief to the state courts. Generally, pursuant to the exhaustion doctrine[2], a habeas petitioner will be procedurally barred from bringing a federal habeas claim if the claim has not first been presented to the state's highest court with authority to decide the issue. See 28 U.S.C. § 2254[3]; Rose v. Lundy, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379

---

[2]As stated by the Supreme Court:
The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.

Rose v. Lundy, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

[3]Section 2254(b) and (c) reads as follows:
(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
    (A) the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i) there is either an absence of available State corrective process; or

(1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCAR 207; Blakeley v. Rabon, 266 S.C. 68, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C.Code Ann. § 17–27–10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See S.C.Code Ann. § 17–27–90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.

When the petition for habeas relief is filed in the federal court, a Petitioner may present only those issues which were presented to the South Carolina Supreme Court[4] through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must present the issue to the state court before requesting a writ of habeas corpus in the federal courts. See Rose, 455 U.S. at 515; Richardson v. Turner, 716 F.2d 1059 (4th Cir.1983); Patterson v. Leeke, 556

_____

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available        in the courts of the State.
(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[4]The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review in the South Carolina Supreme Court after the petition's transfer to the South Carolina Court of Appeals. See State v. McKennedy, 348 S.C. 270, 559 S.E.2d 850, 854 (S.C.2002), citing In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases, 321 S.C. 563, 471 S.E.2d 454 (S.C.1990).

F.2d 1168 (4th Cir.1977).

If a petitioner fails to raise a claim at the appropriate time in state court and state procedural rules bar further means of presenting the issue to the state courts, the claim is procedurally bypassed and, generally, is procedurally barred from federal habeas review. Smith v. Murray, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Federal courts have jurisdiction to consider habeas claims subject to procedural bar (through exhaustion or procedural bypass); however,

> ... the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)); see also Engle v. Isaac, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

### B.    Cause and Actual Prejudice

To have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A Petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir.1990), cert. denied, 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.1988), cert. denied, 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988). Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054, 121 S.Ct. 661, 148 L.Ed.2d 563 (2000). Additionally,

a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir.1997). Petitioner may rely on the doctrine of actual innocence to excuse default. "Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir.1996), aff'd, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir.1999). A petitioner may establish actual innocence as to his guilt. Id. Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. 152, 165–66 (1996). It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir.1995), cert. denied, 517 U.S. 1171, 116 S.Ct. 1575, 134 L.Ed.2d 673 (1996).

## VI.    ANALYSIS

### A.    Ground One–Ineffective Assistance of Counsel

In Ground One, Petitioner asserts several ways in which trial counsel was ineffective.  The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In the case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. Id. at 687.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.  Id.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell

below an objective standard of reasonableness." Id. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir.1985), reversed on other grounds, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986)).

However, to prevail on a claim of ineffective assistance of counsel in connection with a guilty plea, the Strickland test is "some what different." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir.2000). To establish the prejudice prong of the Strickland test, a habeas petitioner who pleaded guilty must show " 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " Id. (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)) (discussing the Strickland standard to establish ineffectiveness of counsel in the context of a guilty plea). A determination of the probability of what Defendant would have done but for counsel's alleged errors involves an objective analysis of the totality of the circumstances. United States v. Fugit, 703 F.3d 248, 260 (4th Cir.2012). "The added uncertainty that results when there is no extended formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance." Premo v. Moore, 562 U.S. ——, 131 S.Ct. 733, 745, 178 L.Ed.2d 649 (2011).

Additionally, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington v. Richter, 131 S.Ct. 770, 788 (2011). The Court observed that while " '[s]urmounting

-11-

Strickland's high bar is never an easy task[,]' ... [e]stablishing that a state court's application of

Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v.

Kentucky, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)). The Court instructed that

the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the

two apply in tandem, review is 'doubly' so." Id. (citations omitted).

> ### 1.    Refusal to call key witness

Here, Petitioner asserts that trial counsel was ineffective for refusing to call a key witness,

the victim's mother, who would recant her earlier statement to investigators.  Petitioner raised this

issue in his first PCR application and on appeal.  In denying relief on the particular claim, the state

PCR court found:

> With respect to this claim, the court again finds that the Applicant has failed
> to meet his burden of proof. The Applicant testified that counsel blatantly refused to
> call the victim's mother as a witness if he proceeded to trial. Applicant testified at the
> PCR hearing, as did the victim's mother, that she was trying to frame the Applicant
> and that the incident did not occur. Applicant testified that when he presented this
> information to counsel, counsel stated that he would not call the victim's mother to
> the witness stand.
>
> Counsel testified that this was not the case. He testified that when the 'setup'
> story was first presented to him, he thought it sounded rather unbelievable.  He
> testified that he relayed his feelings towards the story to the Applicant and the
> Applicant's family. He added that he did not refuse to call her to the stand, but was
> unsure of the story's veracity and asked the victim's mother to fill out a notarized
> affidavit saying the same before he would put her on the stand. He testified that this
> was never done.
>
> The court finds counsel's testimony on the issue to be credible, while
> simultaneously finding that the Applicant's testimony on the issue is not credible.
> This Court also finds that the victim's mother's testimony on this issue is not
> credible, as it is in direct contradiction to her prior statement to authorities.  This
> Court notes that counsel simply tried to take steps to assure the veracity of the
> victim's mother's recantation, and that his requests were not heeded.  Therefore,
> Applicant is unable to show that counsel provided him ineffective assistance.
> Moreover, this Court also notes that although the victim's mother testified at the PCR
> hearing that she would recant her statement, the actual victim, though present in the
> courtroom, did not take the stand to say she would recant her statement. As such, this
> Court finds that Applicant would likewise be unable to show resulting prejudice.
> Accordingly, the claim is denied and dismissed.

App. 136-37.

The PCR court found credible trial counsel's testimony that he was skeptical of the new story being presented by the victim's mother such that he asked for an affidavit, which he never received. This credibility ruling is entitled to deference by this court, which the Petitioner may overcome only by showing clear and convincing evidence to the contrary. Wilson v. Ozmint, 352 F.3d 847, 858-859 (4th Cir. 2003) (quoting Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)) (internal citations omitted); Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)) (for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear. . . . Indeed, federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them).

It is important to note that trial counsel was never put in a position to call any witnesses because Petitioner pleaded guilty. Furthermore, trial counsel specifically testified that he did not refuse to call the victim's mother. During the hearing, trial counsel testified that the vicitm's mother

> called to tell me that she and [Petitioner] were having intercourse and that she took the sperm and rubbed it on her abdomen. And my response to her was: "That is very unusual. I would be far more comfortable if you went and had an affidavit made to that effect so that I would have some basis for making this allegation in case something change and I don't want to look as if I was putting up some evidence that there was not basis in fact or law for me to make." I never heard back from her.

App. p. 103. Later, when cross-examined by Petitioner's PCR counsel and asked if he would have put the victim's mother on the stand, trial counsel responded,

> I would have explained to him the danger of us calling her, and if he insisted I would have.
> Q. So on Sunday you didn't indicate to him that you weren't going to put her up there?
> A. I was prepared to call anybody he wanted.

App. pp. 107-08.

-13-

The PCR court found that trial counsel did not refuse to call the victim's mother nor was he ineffective by attempting to determine the veracity of the victim's mother's statement by asking for an affidavit. The PCR court also found, even if trial counsel had committed error, no prejudice resulted from that error because the victim never indicated that she would recant her statement. As such, based upon the facts as presented to the PCR court and the totality of the circumstances, Petitioner failed to show that he would not have pleaded guilty but for trial counsel's alleged error. Based upon the record presented, Petitioner fails to show that the PCR court's ruling on this issue resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, nor was it based on an unreasonable determination of the facts in light of the State court proceeding.

### 2. Failure to appeal guilty plea

Here, Petitioner asserts that trial counsel was ineffective for failing to appeal Petitioner's guilty plea even though he was instructed to do so. Petitioner raised this issue in his first PCR application and on appeal. The PCR court addressed it in its Order of Dismissal:

> Absent extraordinary circumstances, there is no constitutional requirement that a defendant be informed of the right to a direct appeal from a guilty plea. However, trial counsel has a constitutionally imposed duty to consult with his client about an appeal when there is reason to think either (1) that a rational defendant would want to appeal or (2) that the particular defendant reasonably demonstrated to counsel that he was interested in appealing. Jones v. State, 382 S.C. 589, 677 S.E.2d 20 (2009).
>
> With respect to this claim, this Court finds that the Applicant has again failed to meet his burden of proof. This Court finds counsel's testimony that he informed the Applicant of his right to appeal on at least three different occasions to be credible, while simultaneously finding Applicant's testimony that he was not so informed not to be credible. Furthermore, this Court notes that the plea court informed Applicant of his right to appeal at the close of the guilty plea hearing. Therefore, this Court finds that the Applicant is unable to show ineffective assistance of counsel for failure to inform him of his right to appeal. And even if Applicant could show he was not informed of his right to appeal, the fact that he entered a guilty plea waived all non-jurisdictional defenses. Therefore, this Court finds that it would not be obvious from the circumstances that a rational defendant would want to appeal.

-14-

With regard to the assertion that an appeal was requested, thus evidencing a reasonable desire for appeal, this Court finds counsel's testimony that the Applicant did not request that file an appeal to be credible, while finding the Applicant's testimony on the issue not to be credible. Therefore, this Court finds that Applicant has neither shown ineffective assistance of counsel nor resulting prejudice. Accordingly, the allegation is denied and dismissed.

App.p. 137-138.

As stated above, the PCR court's credibility determinations are entitled to deference and are supported by the record. The PCR court reasonably applied the mandates of Strickland by finding that trial counsel was not ineffective because he did indeed notify Petitioner of his right to appeal on at least three different occasions and that Petitioner never requested an appeal, and also by finding no resulting prejudice.[5] Thus, the PCR court's rulings on this issue were not contrary to nor did they involve an unreasonable application of clearly established Federal law, nor were they based on an unreasonable determination of the facts in light of the State court proceeding. Thus, habeas relief is not appropriate on this issue.

### 3.     Failure to Investigate

Here, Petitioner alleges that trial counsel was ineffective for failing to adequately investigate his case. He raised this issue in his amended PCR application and on appeal. The PCR court addressed this claim in its Order of Dismissal:

With respect to this claim, this Court again finds that the Applicant has failed to meet his burden of proof. This Court finds that counsel's testimony that he met with the Applicant several times to discuss the case, talked with the Applicant's family,

---

[5]Furthermore, although Petitioner argues that had an appeal been filed he would have argued that the trial judge erred in issuing a sentence that seemed to be influenced by what appeared to be a lack of full remorse on petitioner's behalf, this issue was not preserved for review on direct appeal. See State v. Williams, 303 S.C. 410, 401 S.E.2d 168 (1991) (defendant must object at first opportunity to preserve issue for appellate review; alleged error must be raised to and ruled on by trial judge); Rolen v. State, 384 S.C. 409, 415-416, 683 S.E.2d 471, 475 (S.C. 2009) (guilty plea issue would not have been preserved for the appellate court's direct appeal review because counsel never made such a motion).

sought out witnesses on Applicant's behalf, obtained discovery in the case and discussed possible defenses, and had an independent DNA analysis done to be credible. Moreover, this Court finds Applicant's testimony that counsel did not perform an adequate investigation, and that if he did an investigation he would have found several witnesses who would testify to the Applicant's innocence, not to be credible. Therefore, this Court finds that Applicant has not shown that counsel provided ineffective assistance. Further, this Court notes that the victim in the case did not testify at the PCR hearing, so statements made by other witnesses regarding her desire to recant her accusation are speculative at best. In addition, there was ample evidence of the Applicant's guilt in the case, and this Court has also found the Applicant's guilty plea to be freely and voluntarily entered. As such, even if the Applicant could prove that counsel provided ineffective assistance, Applicant would be unable to show resulting prejudice. Here, neither prong of the Strickland analysis is satisfied. Accordingly, the allegation is denied and dismissed.

App. p. 134.

During the PCR hearing, trial counsel testified that he met with Petitioner a number of times and attempted to discuss the case with him, but Petitioner was evasive about what his exact defense would be. App.p. 91-92. Trial counsel also stated that he received inculpatory DNA results, and discovery from the state including witness statements which he revealed to Petitioner. App.p. 91-93. More particularly, the discovery he received included statements from the victim and the mother, the DNA results, Officer Baumgardner's investigative reports, the scientific report from Lexington Hospital, the scientific SLED report with the DNA, an incident report from the Orangeburg Sheriff's Department who directed them to Lexington County, and a printout concerning whether Petitioner had a record. App. p. 94-95. In addition, he had an independent DNA review which proved to be supportive of the state's case. App. p. 99. He further stated that he had conversations with Petitioner's sister and the victim's mother who told him of other witnesses who would "say all kinds of things" and counsel asked them to bring them to him so he could talk to them and evaluate whether their testimony was admissible and relevant but they did not do so. App. p. 97. He also testified that he gave Petitioner's family blank affidavits to fill out but none were returned. Trial counsel testified that he was never provided addresses or telephone numbers for these other

-16-

witnesses, but he prepared several blank subpoenas in case Petitioner's family members ever provided him with contact information for them.  App. p. 97.

As noted above, the PCR court found credible trial counsel's testimony that he would have called any witness Petitioner wanted him to call if the Petitioner decided to go to trial and that he had blank subpoenas ready for any witnesses Petitioner could produce or for which he could provide contact information.  App. p. 107-08.  Furthermore, Petitioner testified during the PCR hearing that he knew of the witnesses who would have had favorable testimony.  App. p. 41.  Petitioner failed to show that if trial counsel conducted an appropriate investigation, he would have uncovered information that, if Petitioner had known, he would have decided not to plead guilty.  Petitioner knew of the witnesses who had favorable testimony and trial counsel never refused to call these witnesses, yet Petitioner decided to plead guilty anyway.

The PCR court found no error and, even if error, no prejudice in accordance with <u>Strickland</u>. Based upon the record evidence, the PCR court's ruling that Petitioner failed to establish that trial counsel was ineffective is not contrary to nor does it involve an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the State court proceeding.  Thus, habeas relief is not appropriate on this issue.

### 4.    Advise of Rights

In the next issue, Petitioner asserts that counsel was ineffective for failing to advise him of his rights.  He raised this general assertion in his amended PCR application but did not raise it in his petition for writ of certiorari.  As set forth above, a prisoner in state custody "generally must exhaust state court remedies, and a federal habeas court may not review unexhausted claims that would be treated as procedurally barred by state courts—absent cause and prejudice or a fundamental miscarriage of justice." <u>Longworth v. Ozmint</u>, 377 F.3d 437, 447–48 (4th Cir.2004) (internal citation

omitted); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State; or ... there is an absence of available State corrective process."). "The exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition." Mickens v. Taylor, 240 F.3d 348, 356 (4th Cir.2001) (en banc); see also Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.1998).

To the extent this issue raises a claim of ineffective assistance of counsel other than those otherwise addressed herein, this issue is procedurally barred from federal habeas review unless Petitioner can show cause for the default and prejudice if the ground is not addressed or actual innocence. Petitioner does not argue cause and prejudice, however he does argue actual innocence as a gateway to address this claim pursuant to Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

"[A]ctual innocence for the purposes of Schlup is a procedural mechanism rather than a substantive claim." Teleguz v. Pearson, 689 F.3d 322, 327 (4th Cir.2012). It simply provides a gateway for the court to consider the otherwise procedurally defaulted claim. McQuiggin v. Perkins, ─── U.S. ───, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013). To raise a Schlup gateway claim, the claim "must be supported by 'new reliable evidence.' " Schlup, 513 U.S. at 324. In Schlup, the Supreme Court held that a claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. Also, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327. In addition, the petitioner must establish factual innocence of the crime, and not mere legal insufficiency. See Bousley v. United

States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The Supreme Court has emphasized that the exception is limited to "certain exceptional cases involving a compelling claim of actual innocence." House v. Bell, 547 U.S. 518, 521, 126 S.Ct. 2064, 165 L.Ed.2d 1(2006); see also Schlup, 513 U.S. at 324 (noting that "experience has taught us that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare").

In McQuiggin, the Supreme Court reemphasized that successful Schlup claims are rare:

> We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329, 115 S.Ct. 851, 130 L.Ed.2d 808; see [House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)] (emphasizing that the Schlup standard is "demanding" and seldom met). And in making an assessment of the kind Schlup envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. Schlup, 513 U.S., at 332, 115 S.Ct. 851, 130 L.Ed.2d 808.

McQuiggin, 133 S.Ct. at 1928. The Court repeatedly emphasized the very narrow class of cases where petitioners present newly-discovered evidence that raise a colorable claim of actual innocence. Id. at 1935, 1936, and 1933 ("[t]he miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' Schlup, 513 U.S. at 329 (internal quotation marks omitted)").

Here, the court must evaluate Petitioner's claim of actual innocence under the standard set forth in Schlup coupled with the well-held regard for the finality of guilty pleas. The Supreme Court has admonished that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). "In addition to emphasizing the sheer volume of guilty pleas, the Supreme Court has located independent value in the fact that such a plea 'usually

rest[s] ... on a defendant's profession of guilt in open court[.]' " <u>United States v. Fugit</u>, 703 F.3d 248, 253 (4th Cir.2012) (quoting <u>United States v. Dominguez Benitez</u>, 542 U.S. 74, 82–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)). Moreover, "[t]he advantages of plea bargains [to all concerned] 'can be secured ... only if dispositions by guilty plea are accorded a great measure of finality.'" <u>United States v. Lemaster</u>, 403 F.3d 216, 219–20 (4th Cir.2005) (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). As such, a defendant's statements during a plea colloquy "carry a strong presumption of verity" that poses "a formidable barrier in any subsequent collateral proceedings." <u>Id.</u> (quoting <u>Blackledge</u>, 431 U.S. at 74).

During the plea colloquy, Petitioner admitted his guilt and stated "I'm just sorry for what I done," App. p. 17, following the solicitor's recitation of facts:

> It started off on the morning of July 11th in the early hours. Basically, the victim in the matter, [redacted] was cohabitating - - or she was living with her mother and her 2 sisters under the roof at [redacted].
> She said that she was asleep in her bed. Earlier that night Mr. Williams had come in and got her 2 siblings; [redacted] who was age 11, and [redacted] who was age 4, and removed them and put them at the foot of the parents' bed, which is her mother's.
> And so the children that were occupying the same room - - and I'll pass up to the Court a photograph. This is the bedroom where the children were. And the 2 younger ones were in the colorful bed, and [redacted] was in the one that sort of has a zebra-like pattern to the mattress cover.
> She said she was alone in that room and sometime after midnight Travis came in wearing a t-shirt and 2 sets of underwear, a pair of boxer shorts and pair of jockey briefs underneath. She says that he then told her to be quiet, that if she made any noise he would kill her. And that he removed his underwear, kept his t-shirt on, engaged in vaginal sex with her. Just before he ejaculated, he removed himself from her vagina, ejaculated onto her abdomen and leg and left semen depositions on the mattress.
> Apparently, there was an awakening by Victim's mother and she awoke to find Travis missing from her bed. And she didn't know where he was so she called out his name. That led to a panic on the part of Mr. Travis Williams, who then quickly jumped up, put on his boxer briefs, forgot about his jockey shorts, which were left at the foot of the children's bed.
> And I'll show to the Court this photograph which is an extra large pair of men's underwear that was found at the foot of the children's bed.
> At that point, she says he ran to the back door and acted as if he had been outside coming in to prepare for a fishing trip. She says that he then convinced the mother

or told the mother that he was going fishing, and he departed on this fishing trip with another male individual who was living in the trailer.

The mother then became suspicious and confronted the daughter, and asked her what had occurred. And she said that Travis had come in and had sex with her not only on that particular night but also on June 28th, a couple weeks beforehand. He had taken her virginity when he came in and raped her while the 2 siblings were put into the bathroom and the mother was off on a shopping trip. That left him alone with the 3 girls in which he took advantage on the June 28th event.

There was blood on the bed linens as a result of that, and apparently he blamed it on a dog being in heat and then immediately put it into the laundry. That was the earlier charge that we are nolle prossing.

Once the second event occurred - - the mother had found out about the July 11th event then the mother took all the children and removed them from the trailer, went to the birth father, the father of all of the children, took the children there. They went to the Orangeburg deputies but they determined that this was a Lexington County case, called the Lexington County Sheriff's Office.

A deputy escorted them from the county line to the Lexington Emergency Room whereupon a rape protocol kit was done by a Nurse Gibbs at the hospital. They found some white fluid in the child's vaginal vault.  They also found a semen encrusted pubic hair on her abdomen.

Then a search warrant was obtained, the sheets were seized as well as that underwear in those photographs that you see there.

I'll offer up to the Court a picture of [redacted] that was taken at the emergency room showing her condition that night.

She then gave a statement to Detective Baumgardner detailing the events that I just replayed to the Court. The rape protocol kit was collected, taken and turned into evidence, submitted to SLED.

The pubic hair came back as a 1 in 250,000 match to being a mixture of the victim's body fluids on the hair as well as the defendant's body fluids being on there.

Additionally, the sheets, when they were checked, there was the presence of biological material on it. Cuttings were made and there was a 17 quintillion D.N.A. match as to being Mr. Travis Williams as the person who left that semen deposit on the mattress covers of the child's bed depicted that you see depicted in that earlier photograph.

App. pp. 6-9.

As new, reliable evidence, Petitioner submits the affidavit of the victim in this case.  She

avers that she accused Petitioner of sexually assaulting her, but, prior to his guilty plea, she told Tina

Mitchell and Ashley Walker that he did not sexually assault her.  Hoover Aff. ¶¶ 2-3.  She further

avers that Petitioner never sexually assaulted her nor had sexual intercourse with her, her statement

to the police was not true and Petitioner is innocent.  Hoover Aff. ¶¶ 4-7.  Finally, she avers that

Petitioner's trial counsel never contacted her.  Hoover Aff. ¶ 8.

The undersigned recommends a finding that the victim's recantation is not sufficiently reliable evidence of innocence to support a claim of actual innocence.  See United States v. Hackley, 164 F. App'x 301, 305 (4th Cir.2006) (observing that "recantation testimony [is] 'looked upon with the utmost suspicion'" (quoting United States v. Johnson, 487 F.2d 1278, 1279 (4th Cir.1973))).  The quality of evidence necessary to support a claim of actual innocence "is obviously unavailable in the vast majority of cases." Schlup, 513 U.S. at 324; see also Calderon v. Thompson, 523 U.S. 538, 559 (1998) (emphasizing that new reliable evidence of innocence is a "rarity").  Given the suspicion generally surrounding recantation testimony, coupled with the "strong presumption of verity" this court must afford Petitioner's guilty plea and the other evidence of guilt, Petitioner claim of actual innocence is without merit and fails to excuse his procedural default of this issue.

### 5.    Failure to call alibi witness

Here, Petitioner asserts that trial counsel was ineffective because he "failed to call alibi defense witness who was available where she would state how she set up petitioner by wiping semen (petitioner's) on the child."  Petitioner did not specifically raise a failure to call an alibi witness claim in his PCR application, although the issue of alibi witnesses was discussed at the PCR hearing. Nevertheless, this claim involves an issue that has already been addressed above, either with respect to Petitioner's claim of ineffective assistance of counsel for failing to call the victim's mother, the individual who asserts she wiped Petitioner's semen on the victim, or ineffective assistance for failure to properly investigate.  For the reasons stated above, Petitioner fails to meet his burden on either issue.  Thus, dismissal of this claim is appropriate.

### B.    Ground Two–Involuntary Guilty Plea

In ground two, Petitioner asserts that trial counsel erred in allowing him to plead guilty based

upon the available evidence.  With respect to this issue, the PCR court found that Petitioner failed

to meet his burden of proof:

> This Court finds Counsel's testimony that he fully informed the Applicant of the charges, the possible punishments, his constitutional rights, and the consequences of entering a guilty plea to be credible, while simultaneously finding that the Applicant's testimony and the Applicant's family's testimony on these issues is not credible.  The finding is made based upon a full review of the record, which includes the guilty plea transcript.
>
> At the guilty plea hearing, the Applicant testified that he was not under the influence of any medicine, alcohol or drugs, and that he did not have any physical or mental problems that affected his thinking.  Further, the Applicant testified that he was clear headed and knew what he was doing.
>
> The plea court explained to the Applicant his constitutional rights, including the right to a jury trial, and further explained that by entering a guilty plea the Applicant was giving up his constitutional rights.  The plea court also informed the Applicant that by entering a guilty plea he waived any defenses he may have had, any challenges to the evidence, and moreover admitted his guilt.  The Applicant replied that he understood.
>
> The Applicant stated that he did not want a jury trial.  The Solicitor read the plea agreement into the record, stating that it was a most serious offense, which would require mandatory sex-offender registration.  The Applicant admitted he was guilty of the offense.  The Applicant stated that no one had forced, threatened or coerced him in any way to get him to plead guilty.
>
> The plea court explained to the Applicant that any plea bargains must be put on the record or they would be lost, and the Applicant replied that he understood.  The Applicant then testified that other than what was put on the record, no one had promised him anything in order to secure his guilty plea.  Applicant testified that he was fully satisfied with his attorney, that there was nothing else he wanted his attorney to do, that there were no witnesses he wanted his attorney to speak with or any investigation that he wanted his attorney to do.
>
> The plea court explained to the Applicant that the charge carried up to twenty years in prison, and the Applicant replied that he understood.  Applicant testified that he understood everything the plea court told him, that he was certain he wanted to give up his rights and plead guilty, and that he made the decision of his own free will.  Finally, Applicant again asserted that he was pleading guilty because he was, in fact, guilty of the charge.
>
> Based upon a full review of the testimony presented at the PCR hearing and the record before this Court, this Court finds that there is ample evidence that the Applicant's guilty plea was knowingly, intelligently, freely and voluntarily entered.  Accordingly, this charge is denied and dismissed.

App. pp. 132-34.

To be knowing and voluntary, a plea must be entered with a full understanding of the charges

and the consequences of the plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); <u>Dover v. State</u>, 304 S.C. 433, 434, 405 S.E.2d 391, 392 (1991). When determining issues relating to guilty pleas, a PCR court should consider the entire record, including the transcript of the guilty plea, and the evidence presented at the post-conviction relief hearing. <u>Anderson v. State</u>, 342 S.C. 54, 57, 535 S.E.2d 649, 657 (2000) (citing <u>Harres v. Leeke</u>, 282 S.C. 131, 318 S.E.2d 360 (1984)).

The PCR court's factual findings with regard to the guilty plea are consistent with the record. Accordingly, the PCR court's conclusion that trial counsel was not ineffective with respect to Petitioner's guilty plea is not contrary to nor does it involve an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the State court proceeding. Thus, habeas relief is not appropriate on this issue.

### C.     Ground Three–Counsel failed to file a timely notice of appeal

This issue is addressed above with respect to ground one, and for those reasons, is subject to dismissal.

### D.     Ground Four–Ineffective Assistance of Counsel (Actual Innocence)

Although Petitioner attempts to couch this claim as one for ineffective assistance of counsel, he does not actually present it as such in his petition. Rather, he simply asserts that he was actually innocent as evidenced by the victim's affidavit, discussed above. As such, Petitioner's claim must fail. The Supreme Court recently reiterated that it has not recognized a "freestanding claim of actual innocence." <u>McQuiggin</u>, 133 S.Ct. at 1931 (citing <u>Herrera v. Collins</u>, 506 U.S. 390, 404–05, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (noting that "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact")). Furthermore, even if such a claim was cognizable on habeas review, it would necessarily be subject to an even higher

standard of proof than its gateway counterpart set forth in <u>Schlup</u>. <u>See</u>, <u>e.g.</u>, <u>Herrera</u>, 506 U.S. at 417 (noting that even if such a claim existed, the threshold showing would be "extraordinarily high"). As discussed above, Petitioner fails to present sufficient evidence to support his actual innocence claim under <u>Schlup</u> and thus, would also fail to support any assumed freestanding claim.  For these reasons, dismissal of ground four is appropriate.[6]

### E.     Ground Five–Rule 15(a) SCRP

In his final claim, he cites a South Carolina civil rule and complains about the South Carolina sentencing structure which authorizes multiple revocations once the imprisonment portion of the no-parole sentence is completed and he is on community supervision under S.C. Code Section 24-13-100, et seq. This issue was not raised at trial or in the first (and second) post conviction proceeding. Nevertheless, it does not state a federal constitutional violation. It is merely a complaint about the nature of his sentencing and the fact that he will be subject as a matter of state law to community supervision as set forth in state law.  Habeas corpus relief is available to a state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "'[F]ederal habeas corpus relief does not lie for errors of state law." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991). Accordingly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Id.</u>   Accordingly, dismissal of this ground is appropriate.

---

[6]Furthermore, Petitioner has failed to meet the threshold required to introduce new evidence in this habeas action set forth in 28 U.S.C. § 2254(e)(2) (providing that a Petitioner may present new evidence only if his claim relies on "(1) a new rule of constitutional law, made retroactive to cases on collateral review ... that was previously unavailable; or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence"); <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

## VII.    CONCLUSION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (Document # 24) be granted, and that the Petitioner's Petition for Writ of Habeas Corpus be denied, and the Petition dismissed without an evidentiary hearing.[7]


                                                  s/Thomas E. Rogers, III
                                                 Thomas E. Rogers, III
                                                 United States Magistrate Judge

January 3, 2014
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[7]If the district judge accepts this recommendation, all other motions will be moot.