IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Travis J. Williams, #321552, ) | No. 4:13-cv-0005-RMG |
| ) | |
| Petitioner, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Warden McFaden, ) | |
| ) | |
| Respondent. ) | |

This matter comes before the Court on the Report and Recommendation (R & R) of the Magistrate Judge (Dkt. No. 32), recommending that Respondent's Motion for Summary Judgment be granted. For the reasons stated below, the Court **ADOPTS** the R & R, as modified. Accordingly, Respondent's Motion for Summary Judgment (Dkt. No. 24) is **GRANTED**.

## I. Background

Petitioner is an inmate with the South Carolina Department of Corrections. On April 30, 2007, Petitioner pleaded guilty to one count of criminal sexual conduct 2nd degree, child 11-14 years of age, and was sentenced to twenty (20) years confinement. (Dkt. No. 23-6 at 3-19). Petitioner did not appeal his conviction or sentence.

Petitioner filed an Application for Post-Conviction Relief (PCR) on February 7, 2008. In his PCR proceeding Petitioner raised the following issues: ineffective assistance of counsel (on various bases) and involuntary guilty plea. (*Id.* at 22-26, 32-34). The PCR court heard testimony from Petitioner, Petitioner's plea counsel Nathaniel Robertson, and the victim's mother, among others. (*Id.* at 57-63, 72-84, 90-120). On September 13, 2010, the PCR court dismissed Petitioner's application in its entirety. (*Id.* at 123-142). Petitioner filed a Petition for Writ of

Certiorari, and the South Carolina Supreme Court denied the petition on December 6, 2012, and remittitur was issued on December 28, 2012. (Dkt. Nos. 23-1, 23-3, 23-4).

On February 23, 2013, Petitioner filed a second PCR application raising additional ineffective assistance of counsel claims and again claiming that his guilty plea was involuntary. (Dkt. No. 23-7). This second PCR application was dismissed as successive and untimely. (Dkt. No. 23-9; Dkt. No. 32 at 5 n.5). No notice of appeal was filed. (Dkt. No. 32 at 5 n.5).

Petitioner then filed this federal habeas corpus petition, raising the following grounds for relief:

**Ground One**: Ineffective Assistance of Counsel

> A. Counsel advised Applicant that he would refuse to call a key witness that would recant her earlier statement to investigators and refuse the accusation against the Applicant.
>
> B. Did not file my direct appeal in which I informed him to.
>
> C. Applicant's defense counsel failed to adequately investigate Applicant's case.
>
> D. Counsel failed to advise Applicant of his rights as a criminal case defendant.
>
> E. Counsel failed to call an alibi defense witness who was available where she would state how she set petitioner up by wiping petitioner's semen on the child.

**Ground Two**: Involuntary Guilty Plea

> Trial counsel erred in allowing petitioner to plead guilty in the case where an alibi defense witness was available, and where witnesses heard the prosecutrix admit she fabricated the sexual assault allegation against petitioner and where the prosecutrix's mother admitted to defense counsel that she framed petitioner and explained how she accomplished this (by wiping petitioner's semen on the child) because there was no need for a plea due to this exculpatory evidence which would have exonerated petitioner on the charges.

**Ground Three**: Counsel failed to file a timely notice of appeal when directed to do so by Applicant.

> A. Petitioner told counsel to file a direct appeal on his conviction and counsel did not file one.
>
> B. PCR judge erred in denying Petitioner's allegation that he did not voluntarily and intelligently waive his right to a direct appeal in the case.

**Ground Four**: Ineffective Assistance of Counsel (Actual Innocence)

**Ground Five**: Rule 15(a) SCRP

> Petitioner claims that he was sentenced under S.C. Code Ann. § 24-13-100 for a no parole offense, requiring him to complete a community supervision program of up to two years. He states that because he could be subject to multiple revocations of the community supervision program that he could be required to serve additional time, up to the amount of time imposed for the original sentence. Petitioner claims that this statute violates the Fifth Amendment's prohibition against double jeopardy.

(Dkt. No. 1).

The Magistrate Judge recommended that summary judgment be granted to Respondent, finding (1) Petitioner failed to show that the PCR court's rulings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law or that the PCR court rulings were based on an unreasonable determination of the facts in light of the State court proceeding, (2) that Petitioner's claim that counsel was ineffective for failing to advise him of his rights was procedurally barred, (3) that federal courts have not recognized a freestanding claim of actual innocence and that even if such a claim was cognizable on habeas review, Petitioner failed to present sufficient evidence to support such a claim, and (4) that Petitioner's fifth ground for relief was based on state law and, therefore, subject to dismissal. (Dkt. No. 32). Petitioner filed timely objections to the R&R. (*See* Dkt. No. 37).

## II. Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court is charged with making a de novo determination of those portions of the R & R or specified proposed findings or recommendations to which objection is made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)); *accord* Fed. R. Civ. P. 72(b). As to portions of the R & R to which no specific objection has been made, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Id.* (quoting Fed. R. Civ. P. 72 advisory committee note). Moreover, in the absence of specific objections to the R & R, the Court need not give any explanation for adopting the Magistrate Judge's analysis and recommendation. *See Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

Petitioner's claims are governed by 28 U.S.C. § 2254(d), which provides that his petition cannot be granted unless the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. Discussion

### A. Procedurally Barred Claim - Ineffective Assistance for Failure to Advise of Rights (Ground 1 D)

The Magistrate Judge correctly found that this ground was procedurally barred from federal habeas review.

A habeas petitioner must exhaust the remedies available to him in state court. 28 U.S.C. § 2254(b)(1). This requires a habeas petitioner to "fairly present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Procedural bypass, sometimes referred to as procedural bar or procedural default, occurs when a petitioner seeking habeas corpus relief failed to the raise the issue asserted in his habeas petition at the appropriate time in state court. Because the petitioner has no further means of raising the issue before the state courts, he is considered to have bypassed his state court remedies and is, thus, procedurally barred from raising the issue in a federal habeas proceeding. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Weeks v. Angelone*, 176 F.3d 249, 272 n.15 (4th Cir. 1999) ("A claim is procedurally defaulted when it is rejected by a state court on an adequate and independent state procedural ground.").

Here, Petitioner asserts that trial counsel was ineffective for failing to advise him of his rights as a criminal defendant. This issue, while raised in his PCR application, was not raised in

his petition for writ of certiorari. (Dkt. No. 23-1). Petitioner does not argue that he has cause for failing to raise this issue (*see Murray*, 477 U.S. at 533), but claims actual innocence under *Schlup* as a procedural mechanism for addressing this otherwise defaulted claim. Under *Schlup*, a prisoner must establish that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"[1] *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In support of his actual innocence claim, Petitioner submits an affidavit by the victim stating that Petitioner "never had sexual intercourse with me" and "never sexually assaulted me," that the victim's statement to the police "was not true," and that Petitioner "is innocent." (Dkt. No. 28-1). At the PCR hearing, the victim was subpoenaed by Petitioner's counsel but apparently refused take the stand to testify. (Dkt. No. 23-6 at 86-89). In his order, the PCR court also noted that the victim was present in the courtroom but did not take the stand to recant her testimony. (*Id.* at 139). With the victim apparently unwilling to take the stand to recant, Petitioner's counsel attempted to put the affidavit at issue here into the record. (*Id.* at 86-89). The PCR court did not allow the submission of the affidavit. The PCR court did not state on the record why it disallowed the submission, but the court disallowed additional testimony by other witness(es) about the supposed recantation because it was hearsay (*id.*), and this affidavit was also inadmissible hearsay. A later email states that the PCR court rejected the affidavit, among other reasons, because there was no evidence indicating that the victim would recant her story prior to Petitioner's plea. (Dkt. No. 37-1).

---

[1] The Magistrate Judge has thoroughly laid out the contours of a *Schlup* gateway claim. (*See* Dkt. No. 32 at 18-20). The Court adopts the R & R and sees no reason to repeat this recitation of the law here.

The affidavit is quite conclusory in nature and fails to give any motivation for why the victim supposedly lied to nurses, doctors, and law enforcement officials in the first instance.[2] Because the victim did not testify, the PCR court was unable to make credibility determinations about her recantation. However, the fact that the victim was unwilling to recant on the stand provides some doubt about the veracity of the affidavit and its recantation, and Petitioner has provided no evidence or even assertion that the victim would be willing to take the stand to recant now. Because the victim was unwilling to recant on the stand, it is not clear that Petitioner could produce this testimony at a trial. *See Weeks v. Bowersox*, 106 F.3d 248, 250 (8th Cir. 1997) ("When a judgment is entered on a guilty plea instead of a verdict, courts assess a prisoner's *Schlup* claim by examining and weighing the evidence each side has asserted that it could produce at trial.").

Regardless, recantation testimony is "looked upon with the utmost suspicion." *United States v. Johnson*, 487 F.2d 1278, 1279 (4th Cir. 1973) (quoting *United States v. Lewis*, 338 F.3d 137, 139 (6th Cir. 1964)). While sufficient corroborating evidence may render a recantation credible (*Hash v. Johnson*, 845 F. Supp. 2d 711, 730 (W.D. Va. 2012)), no such corroborating evidence exists here. The Magistrate Judge found that "[g]iven the suspicion generally surrounding recantation testimony, coupled with the 'strong presumption of verity' this court must afford Petitioner's guilty plea and other evidence of guilt, Petitioner['s] claim of actual innocence is without merit and fails to excuse his procedural default of this issue." (Dkt. No. 32 at 22).

---

[2] The victim's mother also fails to provide any motivation or reason in her PCR testimony for her supposed, and rather elaborate, scheme to frame Petitioner. (Dkt. No. 23-6 at 57-63).

Petitioner's only objection to this portion of the R &R is that he asked his counsel handling the PCR appeal to include the victim's affidavit with his petitioner for writ of certiorari, and that she did not do so because it was not considered by the PCR court below. (Dkt. No. 37 at 3; Dkt. No. 37-1 at 2). Petitioner appears to conflate the actual innocence gateway claim with the underlying procedural default. He claims that appellate PCR counsel should have raised his actual innocence claim in his PCR petition for writ of certiorari, and thus, he has cause for not raising actual innocence. However, whether his actual innocence claim was raised before the state courts is not at issue.

The habeas ground for relief at issue is ineffective assistance of counsel for failure to advise Petitioner of his rights. Petitioner has not objected to the Magistrate Judge's finding that Petitioner does not claim any cause for failure to raise this ground in his PCR petitioner for writ of certiorari. (*See* Dkt. No. 37 at 3). The Magistrate Judge went on to find that Petitioner's actual innocence claim fails to excuse his procedural default on this issue. (Dkt. No. 32 at 22). Petitioner has not objected to the presumptive veracity afforded to his guilty plea by the Magistrate Judge or provided any reason why the victim's affidavit should be looked on with less suspicion than normally accompanies recanted testimony. Therefore, the Court agrees with the Magistrate Judge that Petitioner's claim of innocence does not excuse his procedural default on this issue, and dismissal is appropriate.

Even if the Court found Petitioner's claim was not procedurally barred, it would fail on the merits.[3] This claim was raised in Petitioner's PCR application, but not in his petition for writ

---

[3] While courts "cannot issue the writ for unexhausted or procedurally defaulted claims," they can reach the merits of a habeas petition to deny it. *Flippo v. McBride*, 393 Fed. App'x 93, 97 (4th Cir. 2010) (citing 28 U.S.C. § 2254(b)(2); *see also Yeatts v. Angelone*, 166 F.3d 255,

of certiorari, and the PCR Court found that both trial counsel and the plea court explained to Petitioner his constitutional rights. (Dkt. No. 23-6 at 134-35). The PCR Court found Counsel's testimony on this issue credible. (*Id.* at 134). Petitioner has provided no evidence to call into doubt the PCR Court's ruling on this issue. Therefore, Petitioner has not shown that the PCR court's ruling was contrary to, or involved an unreasonable application of, clearly established Federal law or were based on an unreasonable determination of the facts in light of the State court proceeding.

### B. Grounds One and Three: Ineffective Assistance of Counsel

Where allegations of ineffective assistance of counsel are made, the question is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, the Petitioner must show that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. *Id.* at 687-88. Second, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Review by this Court of "[t]he standards created by Strickland and § 2254(d) are both highly deferential ... and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). In applying § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'* s deferential standard." *Id.*

---

261 (4th Cir. 1999) ("A federal habeas court . . . possesses the jurisdiction to consider a petitioner's constitutional claims that have been procedurally defaulted. . . But . . . concerns of comity and federalism counsel in favor of a federal habeas court declining to reach the merits of the federal claim.").

1. Refusal to Call Victim's Mother (Grounds 1 A & E)

Petitioner claims that his trial counsel was ineffective for refusing to call the victim's mother, who would recant her earlier statement to investigators. The PCR court heard testimony on this issue from Petitioner, the victim's mother and trial counsel. The victim's mother testified that she was trying to frame Petitioner by placing Petitioner's semen on her daughter. (*See* Dkt. No. 23-6 at 59, 138). Petitioner's trial counsel testified that when the "setup" story was presented to him, he thought it sounded unusual and asked the victim's mother to sign an affidavit with this testimony before he would put her on the stand. (*See id.* at 105, 138). Victim's mother never provided him with such an affidavit or got back to Petitioner's trial counsel. (*Id.* at 105-06, 138). Trial counsel testified that if Petitioner had gone to trial, he "would have explained to [Petitioner] the danger of us calling her" but that he was "prepared to call anybody he wanted." (*Id.* at 110).

The PCR court found trial counsel's testimony credible and found Petitioner's testimony and the victim's mother's testimony not credible. (*Id.* at 139). As the Magistrate Judge correctly noted, "for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). The PCR court found that trial counsel did not refuse to call the victim's mother and that counsel was not ineffective, rather he "simply tried to take steps to assure the veracity of the victim's mother's recantation, and that his requests were not heeded." (Dkt. No. 23-6 at 139). He also found that even if trial counsel had committed error, there was no prejudice because the victim was present in the courtroom during the PCR hearing but did not take the stand to recant her story. (*Id.*).

The Magistrate Judge found that Petitioner failed to make the required showing under 28 U.S.C. § 2254(d). (Dkt. No. 32 at 14). Petitioner's only objection to this part of the R & R is that "it was trial counsel['s] job to get victim's mother to fill out a[n] affidavit then and there" when the victim's mother came to his office. (Dkt. No. 37 at 1). It is not trial counsel's responsibility to force a witness to complete and sign an affidavit "then and there," especially if he has doubts as to the truthfulness of the testimony. Furthermore, Petitioner has not provided clear and convincing evidence to rebut the PCR court's finding that trial counsel did not refuse to call victim's mother, nor has he rebutted the PCR court's ruling that there was no prejudice in any event. Therefore, the Court agrees with the Magistrate Judge. Petitioner has not shown that the PCR court's rulings on this issue were contrary to, or involved an unreasonable application of, clearly established Federal law or were based on an unreasonable determination of the facts in light of the State court proceeding.

2. Failure to File a Direct Appeal (Grounds 1 B & 3)

Petitioner claims that he instructed his trial counsel to file a direct appeal, but trial counsel failed to do so. At the PCR hearing, trial counsel testified that he informed Petitioner of his right to appeal on at least three different occasions and that Petitioner did not request him to file an appeal. (*See* Dkt. No. 23-6 at 140). The PCR court found trial counsel's testimony on this issue credible while finding Petitioner's testimony not credible. (*Id.*). The Magistrate Judge found the PCR court's ruling on this issue was not contrary to, or involved an unreasonable application of, clearly established Federal law and was not based on an unreasonable determination of the facts in light of the State court proceeding. (Dkt. No. 32 at 15).

Petitioner objects to this portion of the R & R, claiming that he did ask counsel to file an appeal. (Dkt. No. 37 at 2). Petitioner states, "why would have counsel spoke[n] to petitioner about a plea on three different times, if petitioner didn't decide to plead guilty until April 30, 2007," and claims that "[t]his should show counsel testimony not to be credible." (*Id.*). The Court fails to see how this statement calls counsel's credibility into question. In any event, Petitioner has not shown that the PCR court made a "stark and clear" error in its credibility determinations. *See Cagle*, 520 F.3d at 324. Therefore, the Court agrees with the Magistrate Judge that the PCR court's ruling on this issue was not contrary to, or involved an unreasonable application of, clearly established Federal law and was not based on an unreasonable determination of the facts in light of the State court proceeding.

3. Failure to Investigate (Ground 1 C)

On this issue, the PCR court again found trial counsel's testimony credible and Petitioner's testimony not credible. (Dkt. No. 23-6 at 136). The PCR Court found that trial counsel met with Petitioner several times, talked with Petitioner's family, sought out witnesses on Petitioner's behalf, obtained discovery in the case, discussed possible defenses with Petitioner, and had an independent DNA analysis done. (*Id.*) Therefore, the PCR court found that Petitioner had failed to show that trial counsel was ineffective. (*Id.*) The PCR court also found that there was ample evidence of Petitioner's guilt in the case and that Petitioner's guilty plea was freely and voluntarily entered into; therefore, Petitioner would not be able to show prejudice. (*Id.*)

In finding that Petitioner had failed to make the necessary showing under § 2254(d), the Magistrate Judge noted that trial counsel testified (1) that he asked Petitioner's sister and the

victim's mother to bring in any witnesses they knew of so that he could talk to them and evaluate whether their testimony was admissible and relevant, (2) that he gave Petitioner's family blank affidavits to fill out, but none were returned, (3) that he was never provided with addresses or telephone number for these other purported witnesses, and (4) that he prepared several blank subpoenas in case Petitioner's family members provided him with contact information for other witnesses.[4] (Dkt. No. 32 at 16-17).

The Magistrate Judge also noted that Petitioner testified during the PCR hearing that he knew of the witnesses who would have favorable testimony; thus, he had failed to show that, if trial counsel had spoken to these witnesses, he would have uncovered information that would have caused Petitioner to not plead guilty. (*Id.* at 17). Knowing about these witnesses, Petitioner still chose to plead guilty.

In his objections to the R & R, Petitioner states that trial counsel knew the supposed crime happened in a mobile home park, so he should have inferred that this is where the supposed witnesses were located. (Dkt. No. 37 at 1). Petitioner also states that these witnesses could have provided him with an alibi. (*Id.*). However, this is just a conclusory allegation with no supporting evidence. Petitioner has not provided affidavits of any of these purported witnesses. Nor has he addressed or objected to the Magistrate Judge's finding that, because

---

[4] The Court also notes the following exchange at Petitioner's plea hearing, where Petitioner was under oath:
    THE COURT: Is there anything else you want your lawyer to do on your case that he has not done for you, other than speak for you?
    THE DEFENDANT: No, sir.
    THE COURT: Are there any witnesses you need him to talk to, any investigation he needs to do, anything at all that he has not done for you?
    THE DEFENDANT: No, sir.
(Dkt. No. 23-6 at 12-13).

Petitioner knew about these witnesses (and testified that he told trial counsel about them (*see* Dkt. No. 23-6 at 76)), he has not shown that, if counsel had interviewed these witnesses, it would have uncovered information that would have changed Petitioner's plea. Therefore, the Court agrees with the Magistrate Judge that the PCR court's ruling on this issue was not contrary to, or involved an unreasonable application of, clearly established Federal law and was not based on an unreasonable determination of the facts in light of the State court proceeding.

In his objections to the R & R, Petitioner raises other arguments for the first time. He states that if counsel had investigated, he would have "found that victim stated that petitioner ejaculated onto her abdomen and leg and left semen." (Dkt. No. 37 at 2). Trial counsel, in fact, did find this out, as the victim's statement was included in discovery in the case, and trial counsel discussed it with Petitioner. (Dkt. No. 23-6 at 94, 96). Petitioner asks, "why was there not semon [sic] all over victim's cloth[e]s and panties." (Dkt. No. 37 at 2). However, Petitioner does not state any action that trial counsel should have taken in response to this rhetorical question. Petitioner also claims that "medical records show victim was never sexually assaulted."[5] (*Id.*) Again, trial counsel obtained these records in discovery, and counsel discussed them with Petitioner. (Dkt. No. 23-6 at 94, 96). Petitioner fails to state what else trial counsel should have done with these records. In any event, any such claims were not raised in the PCR court (*see* Dkt. No. 23-1) and are procedurally barred.[6]

---

[5] These medical records state that there are "[n]o lacerations of other signs of trauma," which is not a medical finding that there is no sexual assault. (*See* Dkt. No. 37-1 at 6).

[6] These claims, raised in Petitioner's objection to the R & R, were also not raised in his habeas petition. (*See* Dkt. No. 1).

Finally, Petitioner states that counsel "should have had DNA expert to test pubic hair for mother's DNA also because she stated that her and petitioner had sex and that she took sem[e]n and wiped it on victim, this would have show[n] the whole setup." (Dkt. No. 37 at 2). Petitioner did not raise this issue in his PCR proceeding. (*See* Dkt. No. 23-1). Thus, it is procedurally barred.

## C. Ground Two - Involuntary Guilty Plea

Petitioner asserts that trial counsel erred in allowing him to plead guilty based upon the available evidence. After a full review of the record, including the guilty plea transcript, and hearing all the of the witnesses at the PCR hearing, the PCR court found trial counsel's testimony on this issue credible and Petitioner's testimony not credible. (Dkt. No. 23-6 at 134). The PCR court found that both trial counsel and the plea court explained to Petitioner his constitutional rights. (*Id.* at 134-35). Petitioner stated that he understood, that he wanted to give up his rights, and that he made the decision because of his own free will and because he was, in fact, guilty of the charge. (*Id.* at 135). The PCR court found that Petitioner's guilty plea was "knowingly, intelligently, freely and voluntarily entered." (*Id.* at 136). The Magistrate Judge found the PCR court's factual findings "consistent with the record"[7] and found that the PCR court's ruling with

---

[7] As part of the plea colloquy, the state court judge confirmed that petitioner was not under the influence of any medicine, alcohol or drug and that Petitioner was "clear headed" and knew what he was doing. (*Id.* at 6). The trial court also confirmed that Petitioner was "fully satisfied" with his attorney and that there was nothing else that Petitioner wanted his attorney to do that he had not already done. (*Id.* at 12). The trial court went through all of the rights that Petitioner was waiving by pleading guilty and the consequences of pleading guilty to this particular crime, and Petitioner stated that he understood and did not want a jury trial. (*Id.* at 6-7, 11-14). The prosecutor went through the facts of the crime and the government's evidence, including DNA evidence. (*Id.* at 8-11). Petitioner stated that he was pleading guilty because he was in fact guilty of the charge and that, "I'm just sorry for what I done." (*Id.* at 16, 19).

respect to this issue was not contrary to, and did not involve an unreasonable application of, clearly established Federal law and was not based on an unreasonable determination of the facts in light of the State court proceeding. (Dkt. No. 32 at 24).

In his objections to the R & R, Petitioner states that he "was told what to say at the plea hearing" and that trial counsel told him "just to say 'yes' and get it over with." (Dkt. No. 37 at 3). Petitioner's claim is belied by his testimony before the PCR court. Petitioner testified that trial counsel did not explain how the plea hearing would work. (Dkt. No. 23-6 at 78). When asked what trial counsel told Petitioner about the plea hearing, Petitioner responded that trial counsel "just told me when I signed the paper, that was it for the plea" and then "I would go in front of the judge and be sentenced." (*Id.* at 79). Thus, in his prior testimony, Petitioner claimed trial counsel did not provide him with any information about the plea hearing, even its existence, much less telling him what to say during the plea hearing.

After a review of the record, the Court agrees with the Magistrate Judge that the PCR court's ruling with respect to this issue was not contrary to, and did not involve an unreasonable application of, clearly established Federal law and was not based on an unreasonable determination of the facts in light of the State court proceeding.

### D. Ground Four - Actual Innocence Claim

Whether a freestanding claim of actual innocence is cognizable on habeas review "is an open question." *Dist. Att'ys Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009). In some cases, the Supreme Court has assumed the right existed *arguendo*, "noting the difficult questions such a right would pose and the high standard any claimant would have to meet." *Id.* However, it is clear that the burden of a "hypothetical freestanding innocence claim"

requires "more convincing proof of innocence than *Schlup*." *House v. Bell*, 547 U.S. 518, 555 (2006) (holding petitioner had met the *Schlup* standard but not the burden of showing a hypothetical freestanding innocence claim). Because the Court finds that Petitioner does not meet the burden under *Schlup*, he cannot meet a burden for any freestanding actual innocence claim.

### E. Ground Five

Petitioner claims that the statute under which he was sentenced is unconstitutional. As the Magistrate Judge noted, this ground was not raised at trial or in the PCR proceedings. Therefore, this issue is procedurally barred.[8] Petitioner complains that the PCR court denied his motion to amend his PCR application to include this issue. (Dkt. No. 37 at 3). Petitioner made his motion to amend at the hearing on his PCR application, where neither party had an opportunity to prepare the issue; thus, because of the stage of the proceeding, the PCR court denied the motion.[9] (Dkt. No. 23-6 at 41-42). However, Petitioner does not show cause for his failure to raise this issue on a direct appeal of his sentence or in his initial PCR application or in his Amended PCR Application filed in November of 2009. Therefore, the claim is procedurally barred.

---

[8] The R & R is modified to deny this ground for relief because it is procedurally barred, rather than because it does not state a federal constitutional violation. Petitioner claims that the sentencing structure violates the Fifth Amendment of the U.S. Constitution. (Dkt. No. 1 at 11).

[9] The Court notes that Petitioner was allowed to amend his application to include other issues before the hearing. (Dkt. No. 23-6 at 32-34).

## IV. Conclusion

The Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. No. 32), as modified in this Order. Accordingly, Respondent's Motion for Summary Judgment (Dkt. No. 24) is **GRANTED**.

## Certificate of Appealability

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is DENIED.

**IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

February 10, 2014
Charleston, South Carolina